```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -x

CARTIER, a division of RICHEMONT        :
NORTH AMERICA, INC.; and
CARTIER INTERNATIONAL, N.V.,            :

                 Plaintiffs,            :          MEMORANDUM DECISION

       - against -                      :          06 Civ. 4699 (DC)

MICHA, INC. and MICHEL MOTTALE          :
a/k/a MICHA MOTTALE,
                                        :
                 Defendants.
                                        :
- - - - - - - - - - - - - - - - -x
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April 20, 2007
```

**APPEARANCES:**   KALOW & SPRINGUT LLP
Attorneys for Plaintiffs
    By:  Milton Springut, Esq.
         Tal S. Benschar, Esq.
488 Madison Avenue
New York, New York  10022

BRYAN CAVE LLP
Attorneys for Defendants
    By:  Noah M. Weissman, Esq.
1290 Avenue of the Americas
New York, New York  10104

**CHIN, D.J.**

In this trademark infringement and dilution case, defendants move to dismiss the complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) or, alternatively, to transfer the action under 28 U.S.C. § 1404(a). For the reasons stated below, the motion is denied.

## BACKGROUND

### A.  The Facts

For purposes of this motion, the facts in the complaint are assumed to be true and are construed in the light most

favorable to plaintiffs.  Plaintiff Cartier, a division of Richemont North America, Inc. ("Cartier NA"), is a Delaware corporation with its principal place of business in New York, New York.  (Am. Compl. ¶ 1).  Plaintiff Cartier International, N.V. ("Cartier International") is a Netherlands Antilles corporation with its principal place of business in Curaçao, Netherlands Antilles.  (Id. ¶ 2).  Plaintiffs will be jointly referred to as "Cartier."  Founded in Paris during the 19th century, Cartier is an upscale designer, manufacturer, and retailer of fine jewelry and watches.  (Id. ¶¶ 9-12).  The Cartier brand enjoys world renown, and Cartier NA operates retail shops in cities across the United States, including New York. (Id. ¶¶ 11, 12).

Defendant Micha, Inc. ("Micha") is a California corporation with its principal office and place of business in San Diego, California.  (Id. ¶ 3).  Micha services and sells watches to jewelers and others involved in selling watches to the general public.  (Id. ¶¶ 23-24).  Defendant Michel Mottale is an officer or managing agent of Micha, and the two share the same place of business.  (Id. ¶ 4).

Cartier manufactures many of its watches in both gold and steel versions, but only sets diamonds on the watch and/or watchband in its gold versions of each particular model.  (Id. ¶ 22).  Defendants acquired Cartier watches made of stainless steel or other metals and, without Cartier's authorization, added diamonds to the watches "at various locations, including in direct imitation of the placement of diamonds by Cartier on the

-2-

equivalent genuine versions of such models."  (Id. ¶ 23).
Defendants, and other jewelers for whom defendants render such
services, sell these altered watches to the general public with
the Cartier trademark intact.  (Id.)

Cartier first became aware of defendants' acts of
infringement in a similar action in this Court, Cartier, Inc. v.
Aaron Faber Inc., No. 05 Civ. 6615 (S.D.N.Y.) (Benschar Decl. ¶
3), filed on July 22, 2005.[1]  In response to an interrogatory in
Aaron Faber, J&P Timepieces and one of its principals, Jeff
Morris, identified Micha as having been used by J&P Timepieces to
add diamonds to or to otherwise alter Cartier watches.  (Benschar
Decl. Ex. B ¶ 7).  In his deposition, Morris stated that on two
occasions he engaged Micha to place diamonds on Cartier watches
for him.  (Id. Ex. C at 2-3).  Invoices date the two transactions
to July 11 and 17, 2002 (id. at 4-5) -- the only business
conducted between Morris and J&P Timepieces and Micha.  (Id. at
2).  While Morris did not refer to Mottale by name in the
deposition, he used "Micha" and the terms "he" or "him"
interchangeably.  (Id. at 2-3).  Morris indicated that he might
have given "him" one of the watches, a Cartier "Panther," at a

---

[1] In Aaron Faber Cartier sued Aaron Faber, Inc. and J&P Timepieces, among others, on the same causes of action as in the instant case.  2005 WL 3655412 (S.D.N.Y. July 22, 2005). Defendants there allegedly purchased stainless steel Cartier watches and added diamonds to them in violation of Cartier's trademark.  Id.  Plaintiffs were granted a preliminary injunction against Aaron Faber, Inc., Cartier, Inc. v. Aaron Faber, Inc., 382 F. Supp. 2d 623 (S.D.N.Y. 2005), and against J&P Timepieces, Cartier, Inc. v. Aaron Faber, Inc., 382 F. Supp. 2d 625 (S.D.N.Y. 2005), pending trial.

trade show, after which "he" likely mailed the watch to Morris in New York, although "he" may have delivered the Panther to Morris at a later trade show. (Id. at 2). An invoice from Micha to Morris for a transaction involving a Cartier "Baignoire" included a line-item charge for shipping to Morris in New York. (Id. at 5). Micha charged Morris a total of $5,965 for work on both watches. (Benschar Decl. Ex. F at 1-2). J&P Timepieces and Morris have their place of business in New York, New York. (Benschar Decl. ¶ 3).

After learning of defendants' alleged actions in the course of the Aaron Faber proceedings, Cartier served Micha with a subpoena to produce all documents concerning the sale of Cartier watches with "after-market diamonds," or the setting of such diamonds on Cartier watches. (Id. Ex. D at 3). Micha responded to the subpoena and produced documents "showing [a] substantial number of transactions" for the sale of watches with added diamonds, or the mounting of diamonds on Cartier watches at the request of other jewelers. (Benschar Decl. ¶ 8). The transactions evidenced by the documents involved customers in California, New York, six other states, the District of Columbia, Mexico, and Hong Kong. (Id.). Two of the documents concerned the transactions between Micha and Morris. (Id.; see Benschar Decl. Ex. F).

Cartier subsequently deposed Mottale, who appeared on behalf of Micha. (Benschar Decl. ¶ 9; see id. Ex. G). Mottale admitted to working for Micha but invoked his Fifth Amendment

right against self-incrimination when asked, <u>inter alia</u>, about his specific position at the company and whether anybody else worked for Micha.  (Benschar Decl. Ex. G at 3).  Mottale continued to invoke the Fifth Amendment in response to nearly all the substantive questions posed at the deposition.  (<u>Id.</u> at 2-4).

        Cartier identifies several actions by defendants as giving rise to their complaint: the unauthorized placement of diamonds on watches bearing the Cartier Trademark; the provision of such services to jewelers with the knowledge that the watches would be sold to the general public; and creating confusion among the consuming public regarding the origins of the watches. (Am. Compl. ¶¶ 23, 25, 27.)

**B.**   **Procedural History**

        Cartier filed the complaint in this action on June 19, 2006, asserting trademark infringement under 15 U.S.C. § 1114(1), false designation of origin under 15 U.S.C. § 1125(a), and trademark dilution under 15 U.S.C. § 1125(c).  Cartier also asserts claims of common law trademark infringement and unfair competition, and a New York state claim for dilution pursuant to N.Y. Gen. Bus. L. § 360-l.  Cartier filed an amended complaint on August 31, 2006, asserting that venue was proper pursuant to 28 U.S.C. § 1391(b) because defendants sold infringing watches and/or provided infringing services "to persons in locations throughout the United States, including to persons located in this judicial district."  (Am. Compl. ¶¶ 8, 24).

        This motion followed.

**DISCUSSION**

Defendants move to dismiss for improper venue or, in the alternative, to transfer this case to the Southern District of California.  I address each prong of the motion in turn.

**A.   Motion to Dismiss for Improper Venue**

   **1.   Applicable Law**

On a motion to dismiss for improper venue under Rule 12(b)(3), the burden of proof lies with the plaintiff to show that venue is proper. French Transit, Ltd. v. Modern Coupon Sys. Inc., 858 F. Supp. 22, 25 (S.D.N.Y. 1994) (citing Pocahontas Supreme Coal Co., Inc. v. Nat'l Mines Corp., 90 F.R.D. 67, 69 (S.D.N.Y. 1981)).  Absent a formal hearing on the motion, a plaintiff need only make a prima facie showing of venue to defeat the motion. Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005).  All facts must be construed in a light most favorable to the plaintiff. Exovir, Inc. v. Mandel, No. 94 Civ. 3546, 1995 WL 413256, at *1 (S.D.N.Y. July 12, 1995) (citing Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc., 829 F. Supp. 62, 64 (S.D.N.Y. 1993)).  In ruling on the motion the court may rely on facts and consider documents outside the complaint. Concesionaria DHM, S.A. v. Int'l Fin. Corp., 307 F. Supp. 2d 553, 555 (S.D.N.Y. 2004).  Where a plaintiff asserts multiple claims, venue must be proper as to each of the claims asserted, but a common factual basis between a claim where venue is proper and one where venue is improper may defeat dismissal of

a claim for improper venue.  E.P.A. ex rel. McKeown v. Port Authority, 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001).

Cartier asserts, and defendants do not dispute, that the Court has subject matter jurisdiction over the claims here. (Am. Compl. ¶¶ 6-7).  Defendants challenge, however, Cartier's allegation of venue.  Venue in trademark and unfair competition cases is governed by 28 U.S.C. § 1391(b).[2]  See French Transit, 858 F. Supp. at 25; Pilates, Inc. v. Pilates Inst., Inc., 891 F. Supp. 175, 182 (S.D.N.Y. 1995).  Under § 1391(b) venue is proper only in the following judicial districts: (1) "where any defendant resides, if all defendants reside in the same state"; (2) where "a substantial part of the events . . . giving rise to the claim occurred"; or (3) where "any defendant may be found" if the action may not be brought in any other district.  28 U.S.C. § 1391(b).

Here, Cartier relies on the substantiality test; it contends that "a substantial part of the events" giving rise to the claim occurred in the Southern District of New York.  See 28 U.S.C. § 1391(b).  Determining whether events are sufficiently substantial to support venue is not achieved "by simply adding up the number of contacts."  Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 433 (2d Cir. 2005)(citing Gulf Ins. Co., 417 F.3d

---

[2]  In the "Conclusion" section of defendants' opening and reply briefs, defendants argue for dismissal pursuant to 28 U.S.C. § 1391(a), which only applies to actions covered by federal diversity jurisdiction.  (Defs.' Mem. at 14; Defs.' Reply Mem. at 11.)  Because defendants base their venue arguments in the body of the briefs solely on § 1391(b), the mention of § 1391(a) apparently is an error.

at 357).  Rather, the putatively substantial acts must "bear a close nexus to the claims" in issue.  Id. at 433 (citing Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1372 (11th Cir. 2003)).

Claims in trademark infringement and unfair competition cases arise "'not where the deceptive labels are affixed to the goods or where the goods are wrapped in the misleading packages, but where the passing off occurs, i.e., where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's.'"  G.F.C. Fashions, Ltd. v. Goody's Family Clothing, Inc., No. 97 Civ. 0730, 1998 WL 78292, at *2, (S.D.N.Y. Feb. 24, 1998) (quoting Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633, 639 (2d Cir. 1956)).[3]

Several cases in this district have defined the "substantial part" requirement in trademark infringement cases as follows: For venue in a trademark infringement case to be proper, the defendant must have aimed its marketing and advertising at the district or have sold its infringing goods there.  G.F.C. Fashions, 1998 WL 78292, at *3; see also D'Anton Jos, S.L. v. Doll Factory, Inc., 937 F. Supp. 320, 321-22 (S.D.N.Y. 1996).  If

---

[3]   Contra French Transit, 858 F. Supp. at 25 ("[I]n trademark infringement claims, the actionable wrong takes place both where infringing labels are affixed to the goods and where confusion of purchasers is likely to occur." (emphasis added)). The two cases cited by the French Transit court in support of this proposition -- Vanity Fair Mills, 234 F.2d at 639, and Schieffelin & Co v. Jack Co. of Boca, Inc., 725 F. Supp. 1314, 1319-20 (S.D.N.Y. 1989) -- both support laying venue only in the district where customer confusion may occur.  Indeed, the court in G.F.C. Fashions, Ltd. noted this discrepancy and adhered to the more strict venue rule articulated in Vanity Fair Mills. 1998 WL 78292, at *2 n.3.

there is active marketing or advertising in a district, selling even "nominal" amounts of an infringing product meets the substantiality requirement.  Metro. Opera Ass'n v. Naxos of Am., Inc., No. 98 Civ. 7858, 2000 WL 987265, at *3 (S.D.N.Y. July 18, 2000); Pilates, 891 F. Supp. at 182-82.  Absent proof of marketing to or advertising in a district, however, the sale of a substantial amount of the alleged trademark-infringing goods must occur to satisfy the "substantial part" requirement for establishing venue pursuant to § 1391(b)(2).  D'Anton Jos, S.L., 937 F. Supp. at 321-22.

Venue may be appropriate in multiple districts so long as the substantiality test is fulfilled.  Gulf Ins. Co., 417 F.3d at 356-57.  The "substantial part" requirement in § 1391(b)(2) does not prevent laying venue in a particular judicial district, "even if a greater portion of the events occurred elsewhere."  Concesionaria DHM, 307 F. Supp. 2d at 559; see also Bates v. C & S Adjusters, Inc., 980 F.2d 865, 867 (2d Cir. 1992).  Despite the possibility of multiple appropriate venues, the purpose of the venue statutes is to protect the defendant against a plaintiff's inconvenient or unfair selection of trial location.  Leroy v. Great W. United Corp., 443 U.S. 173, 183-84 (1979).  District courts must "construe the venue statute strictly."  Gulf Ins. Co., 417 F.3d at 357 (citing Olberding v. Ill. Cent. R. Co., 346 U.S. 338, 340 (1953)).  Thus, "significant events or omissions material to the plaintiff's claim must have occurred in the district" for venue to be proper.  Gulf Ins. Co., 417 F.3d at 357

(emphasis in original).

### 2. Application

I conclude that plaintiffs have established a prima facie case that venue is proper in this district as the site of a substantial part of the acts giving rise to the claims. Plaintiffs allege that defendants' sale of infringing watches and/or provision of infringing services "to persons located in this judicial district" give rise to their claims and suffice to establish venue.[4]  (Am. Compl. ¶ 24).

Cartier alleges that defendants performed trademarking-infringing diamond-mounting services for other jewelers, knowing that these watches would be sold to the general public.  (Id. ¶ 23).  These services were rendered to persons located in the Southern District of New York (id. ¶ 24), where customer confusion as to the mark and origins of the watches were likely to occur upon sale.  (Id. ¶ 25).  Construing all facts in a light most favorable to Cartier, defendants serviced and sold two infringing watches to J&P Timepieces and Jeff Morris in Manhattan.  At least one, if not both, of the watches were shipped to J&P Timepieces in New York.

---

[4] Plaintiffs properly allege trademark infringement based on the sale of altered Cartier watches, see Cartier, div. Richemont NA, Inc. v. Symbolix, Inc., 454 F. Supp. 2d 175, 181-83 (S.D.N.Y. 2006); Cartier, div. Richemont NA, Inc. v. Aaron Faber, Inc., 396 F. Supp. 2d 356, 359 (S.D.N.Y. 2005), and contributory trademark infringement based on the rendering of diamond-mounting services to other jewelers with the knowledge that the watch would be sold to the general public.  See Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 853-54 (1982).

Cartier does not allege that defendants marketed or advertised their altered watches in New York; it must therefore show substantial sales of the infringing goods in New York to establish venue here.  <u>Id.</u>  That showing is made here.  Stainless steel Cartier Panther watches sell for around $3,000,[5] and the Cartier Baignoire starts at over $12,500.[6]  The substantial economic value of the infringing goods supports a finding that venue is proper.  Despite defendants' relatively small number of discrete contacts with this district, the focus of this inquiry is on the quality of defendants' actions relative to plaintiffs' claims, not the quantity.  <u>Daniel</u>, 428 F.3d at 432-33.  Defendants altered valuable watches, knowing they would be sold in the Southern District of New York, in a manner that was likely to cause confusion among the purchasing public and dilute Cartier's trademark.  Because of this close nexus, defendants' motion to dismiss pursuant to Fed. R. Civ. P 12(b)(3) is denied.

Defendants object to plaintiffs' venue allegations as overly broad, arguing that laying venue on those grounds would unfairly require defendants to litigate in any judicial district in the United States.  (Defs.' Mem. at 8-9).  While the fairness of the chosen forum should be taken into account in determining

---

[5]   <u>See, e.g.</u>, http://www.amazon.com/ (search "Jewelry and Watches" for "Cartier Panthere").  Cartier no longer produces this line of watches.

[6]   <u>See, e.g.</u>, http://www.redfingerprint.com/watches_list.php/Cartier/Cartier_Baignoire.  This only refers to Baignoire models with metal wrist bands, the type of watch in question here.  <u>See</u> <u>supra</u> at 3.

the propriety of venue, it does not supplant the requisite qualitative analysis into the nexus between the alleged actions in the chosen venue and plaintiffs' claims. Daniel, 428 F.3d at 432 (citing Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995)). As discussed, venue is proper in any judicial district so long as the "substantial part" requirement of § 1391(b)(2) is met, Gulf Ins. Co., 417 F.3d at 356-57, even if the defendant committed a greater quantum of infringing activities outside the chosen venue. Astor Holdings, Inc. v. Roski, No. 01 Civ. 1905, 2002 WL 72936, at *8 (S.D.N.Y. Jan. 17, 2002). The fact that defendants sold these watches nationwide does not preclude laying venue in this district, as a substantial part of the events giving rise to the claims occurred here. Cf. Dave Guardala Mouthpieces, Inc. v. Sugal Mouthpieces, Inc., 779 F. Supp. 335, 337-38 (S.D.N.Y. 1991). Defendants' alleged sale of trademark-infringing watches to customers in multiple judicial districts does not preclude laying venue in any of those districts where the requirements of § 1391(b) are met.

Defendants argue that plaintiffs insufficiently allege Mottale's individual responsibility for the purportedly infringing actions by merely "lump[ing him] in with Micha, Inc." as an officer of the corporation. (Defs.' Mem. at 9-10). For venue to be proper as to Mottale under § 1391(b)(2), the actions in question must be imputed to him as an individual. Plaintiffs allege that Mottale is "an officer or other managing agent of Micha, Inc." and "a conscious, dominant and active force behind

the wrongful acts of Micha, Inc. complained herein". (Am. Compl. ¶ 4). While the complaint does not fully detail Mottale's involvement in the allegedly infringing actions, plaintiffs need only make out a prima facie case, and the Court must construe the facts in the light most favorable to plaintiffs. See Exovir, 1995 WL 413256, at *1. Here, plaintiffs have sufficiently alleged Mottale's involvement with the actions in controversy.

Additionally, it may be inferred that Mottale is responsible for the alleged infringement based on his invocation of the Fifth Amendment during his deposition in the Aaron Faber litigation. (Defs.' Reply Mem. at 5-7). In civil cases, inferences may be drawn against a witness who refuses to answer questions based on the Fifth Amendment. Experience Hendrix, LLC v. Chalpin, 461 F. Supp. 2d 165, 171 (S.D.N.Y. 2006); see, e.g., Baxter v. Palmigiano, 425 U.S. 308, 318 (1976); United States v. 4003-4005 5th Ave., 55 F.3d 78, 82-83 (2d Cir. 1995). Thus, an inference may be drawn against Mottale in this proceeding. While plaintiffs have only alleged and not yet proven that Mottale is the chief actor behind Micha and the actions in question, the accuracy of these allegations may only be vindicated through the discovery process. Cartier need not rely on Mottale's deposition to bear out their facial allegations for purposes of this motion.

**B.   Motion to Transfer**

Defendants alternately move to transfer this case to the Southern District of California.

1.  **<u>Applicable Law</u>**

Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to another district where the case may have been brought if the transfer serves "the convenience of parties and witnesses, [and is] in the interests of justice."  28 U.S.C. § 1404(a); <u>see</u> <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 616 (1964).  The district court has broad discretion in deciding a motion to transfer, <u>In re Cuyahoga Equip. Corp</u>, 980 F.2d 110, 117 (2d Cir. 1992), and will not be overturned on appeal "without a clear showing of abuse."  <u>Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.</u>, 865 F.2d 513, 520 (2d Cir. 1989).  The burden rests on the moving party to make a "clear and convincing" showing that transfer under § 1404(a) is proper.  <u>Millennium, L.P. v. Dakota Imaging, Inc.</u>, No. 03 Civ. 1838, 2003 WL 22940488, at *6 (S.D.N.Y. Dec. 15, 2003).

2.  **<u>Application</u>**

Defendants argue that transfer is appropriate because "the vast majority of the operative events giving rise to Cartier's claims" allegedly occurred in the Southern District of California, and because defendants' limited resources relative to plaintiffs' make California a more convenient venue.  (Defs.' Mem. at 12).  In making these arguments, defendants fail to clearly and convincingly show that transfer from the Southern District of New York is proper.  While defendants' alteration of Cartier watches allegedly occurred in the Southern District of California, trademark infringement claims arise in the judicial

district where consumer confusion took place. See <u>Vanity Fair Mills</u>, 234 F.2d at 639. Furthermore, defendants fail to show that the potential inconvenience to witnesses required to testify in the Southern District of New York would outweigh the inconvenience to plaintiffs of requiring their witnesses to testify in the Southern District of California. I am therefore not persuaded that transfer is appropriate under 28 U.S.C. § 1404(a), and deny defendants' motion.

## CONCLUSION

For the foregoing reasons, defendants' motion is denied. Counsel for the parties shall appear for a pretrial conference on May 11, 2007 at 10:00 a.m.

SO ORDERED.

Dated: New York, New York
April 20, 2007

_____
DENNY CHIN
United States District Judge